IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RACHEL SALLY-HARRIET | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 17-4695 |
| NORTHERN CHILDREN SERVICES | : |

**MEMORANDUM**

**SURRICK, J.**                                                              **MARCH 26 2019**

Presently before the Court is Defendant Northern Children Services' Motion to Dismiss Plaintiff's Amended Complaint. (ECF No. 10.) For the following reasons, Defendant's Motion will be granted in part and denied in part.

## I. BACKGROUND

In this employment discrimination case, Plaintiff Rachel Sally-Harriet brings various claims against her former employer, Northern Children Services ("NCS"), in connection with her termination from the position of Human Resources Director in June 2017. Plaintiff alleges that she was terminated shortly after she underwent emergency surgery and required subsequent time off from work to recover from related gastrointestinal issues. Plaintiff brings claims under the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* ("ADA"), and the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA").

### A. Factual Background

Plaintiff is a forty-one-year-old woman. (Am. Compl. ¶ 14, ECF No. 9.) She began working for Defendant as the Human Resources Director on June 6, 2016. (*Id.* ¶¶ 14-16.) Defendant provides behavioral health services for children and young adults in low-income

communities. (*Id.* ¶ 9.) Plaintiff's supervisor at NCS was the President and CEO, Renata Cobbs-Fletcher. (*Id.* ¶ 17.)

Plaintiff suffers from "health conditions related to her abdomen and stomach, including gastrointestinal issues," which required emergency gallbladder surgery on May 14, 2017. (*Id.* ¶¶ 20, 25.) Plaintiff experienced gastrointestinal issues several months prior to her gallbladder surgery and was rushed to the hospital with severe abdominal pain on May 14, 2017. (*Id.* ¶¶ 21, 24.) Plaintiff states that her health issues "have, at times, limited her ability to perform some daily life activities, including but not limited to, working, sleeping, bending, walking, breathing, controlling bowel movements, and performing manual tasks (among other activities)." (*Id.* ¶ 22.) Plaintiff continued to receive treatment for those issues through at least January of 2018. (*Id.* ¶ 21.)

On May 15, 2017, the day after her gallbladder surgery, Plaintiff contacted her supervisor, Cobbs-Fletcher, and requested time off to recover. (*Id.* ¶¶ 26-7.) Plaintiff informed Cobbs-Fletcher that she would be able to perform some work functions from home. (*Id.* ¶ 26.) During her medical leave, Plaintiff kept Cobbs-Fletcher and other staff members "apprised of her condition, including status updates and her anticipated return to work dates." (*Id.* ¶ 28.)

Plaintiff began to experience "hostility and animosity" from Cobbs-Fletcher "[a]lmost immediately after requesting medical leave." (*Id.* ¶ 29.) For example, within one day of Plaintiff's emergency surgery, Cobbs-Fletcher asked Plaintiff if the surgery was really necessary. (*Id.*) In addition, Cobbs-Fletcher used Plaintiff's paid time off ("PTO") for days when Plaintiff worked from home but was on medical leave. (*Id.*) During Plaintiff's recovery, Cobbs-Fletcher "verbally reprimanded" Plaintiff over the phone "for work issues that were not within Plaintiff's

2

control." (*Id.*) During the weeks that she was recovering from surgery, Plaintiff continued to work from home when she was able. (*Id.* ¶ 30.)

On a few occasions, Plaintiff had to remind Cobbs-Fletcher that she was on medical leave. On May 22, 2017, in response to Cobbs-Fletcher questioning Plaintiff about being absent from work, Plaintiff stated that she was still recovering from abdominal surgery and continued to need medical leave to do so. (*Id.* ¶ 31.) On May 26, 2017, Plaintiff told Cobbs-Fletcher: "I am supposed to be out on medical leave but I am doing work I am not paid to do." (*Id.*) Plaintiff continued to notify Cobbs-Fletcher about her continued need for medical leave through late May and early June. For example, on May 30, 2017, Plaintiff stated to Cobbs-Fletcher that she "woke up this morning with severe abdominal pain, where [she is] often double [sic] over in pain from walking short distances." (*Id.* ¶ 32.) In early June, Plaintiff told Cobbs-Fletcher that she was experiencing complications from her gallbladder surgery and needed to continue medical leave for treatment. (*Id.* ¶ 33.)

On June 6, 2017, Plaintiff returned to work with a doctor's note stating that she was cleared for "full duty" as of June 6th. (*Id.* ¶ 34.) Plaintiff alleges that upon her return to work, she was met with hostility from Cobbs-Fletcher. (*Id.* ¶ 35.) In particular, Cobbs-Fletcher stated that Plaintiff got her "stories confused" about what she was telling co-workers about her medical leave, and that the doctor's note was "insufficient to explain [her] absence and conflicting and insufficient communication for the past two weeks, including substantiation of a rehospitalization and incapacitation that resulted in [her] absence and abandonment of [her] duties." (*Id.*) Beginning on June 7, 2017, Defendant kept Plaintiff out of work pending the investigation. (*Id.* ¶ 36.) That same day, Plaintiff made a written complaint to a member of Defendant's Board of Trustees, Robert Smalls. (*Id.* ¶ 37.) She informed Smalls about the

3

instances of alleged harassment by Cobbs-Fletcher following her surgery and request for medical leave. (*Id.*) She also stated in her complaint that she didn't believe she was compensated for work she performed from home while she was on medical leave. (*Id.*) Board Member Smalls advised Plaintiff that he would not review her grievance, and that Plaintiff should work out the issue with Cobbs-Fletcher personally. (*Id.* ¶ 40.) Smalls also stated in an email to Plaintiff that he:

> never found [Cobbs-Fletcher] to be bullying. To the contrary, I have found her to be sympathetic to employee issues and problems and even-handed in her handling of issues. This fact would not make me impartial.

(*Id.*)

Plaintiff alleges that after she complained to Board Member Smalls, Cobbs-Fletcher again acted hostile towards her. (*Id.* ¶ 39.) On June 8, 2017, just one day after she made the complaint, Plaintiff received a formal written discipline from Cobbs-Fletcher. (*Id.*) In the discipline letter, Cobbs-Fletcher denied that Plaintiff had a disability and stated that "[e]ven were a disability present," Plaintiff "did not follow [Defendant's] call in procedures." (*Id.*)

On June 9, 2017, just two days after making her complaint to Board Member Smalls, Plaintiff was suspended indefinitely without pay. (*Id.*) Plaintiff was advised that she would remain on unpaid leave status "pending the outcome of the full investigation" into her claims of discrimination and harassment. (*Id.*) Smalls told Plaintiff that her complaints, including discussion of legal rights, "did not help her employment situation." (*Id.*) Plaintiff remained out of work for weeks without pay. (*Id.* ¶ 40.) She was never interviewed in connection with the investigation into her complaints.

On June 22, 2017, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that she suffered discrimination and retaliation as a result of her disability and request for medical leave. (*Id.* ¶ 41.)

The following day, Plaintiff was terminated by Cobbs-Fletcher in an email. (*Id.* ¶ 42.) Plaintiff was advised that she was being terminated for payroll issues that occurred months prior to her termination, and prior to her request for medical leave. (*Id.*) Plaintiff had never been disciplined for these payroll issues. (*Id.*) In addition, Plaintiff was told that she took too long to process payroll during the time she had been out on medical leave, took "excessive time off while treating her condition, and failed to submit adequate documentation concerning her absence from work." (*Id.*) Prior to her termination, Plaintiff had worked for NCS for almost a year without any formal negative warnings. (*Id.* ¶ 18.)

### B. Procedural History

The Amended Complaint was filed on January 8, 2018. Plaintiff asserts the following claims under the ADA: (1) discrimination; (2) retaliation; (3) failure to accommodate; and (4) hostile work environment. (Am. Compl.) Plaintiff also asserts claims for retaliation under the FLSA.

On January 22, 2018, Defendant filed this Motion to Dismiss the Amended Complaint. (Def.'s Mot., ECF No. 10.) On February 5, 2018, Plaintiff filed a Response in opposition to the Motion. (Pl.'s Resp., ECF No. 12.) On February 20, 2018, Defendant filed a Reply. (Def.'s Reply, ECF No. 13.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to

relief." Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. A motion under Rule 12(b)(6) tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

In determining whether dismissal of the complaint is appropriate, courts use a two-part analysis. *Fowler*, 578 F.3d at 210. First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true. *Id.* at 210-11. Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

Finally, "a complaint need not establish a prima facie case in order to survive a motion to

dismiss." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788-89 (3d Cir. 2016). A prima facie case is "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002). Therefore, it is "not a proper measure of whether a complaint fails to state a claim." *Fowler*, 578 F.3d at 213. "Instead of requiring a prima facie case, the post-*Twombly* pleading standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements.'" *Connelly*, 809 F.3d at 789 (quoting *Phillips*, 515 F.3d at 234).

## III. DISCUSSION

As noted above, Plaintiff's Amended Complaint asserts the following claims: (1) discrimination under the ADA; (2) failure to accommodate under the ADA; (3) retaliation under the ADA; (4) hostile work environment under the ADA; and (5) retaliation under the FLSA.

Defendant seeks dismissal of all of Plaintiff's claims. Defendant also seeks dismissal of Plaintiff's claim for punitive damages. Defendant contends that Plaintiff fails to allege that she has a disability under the ADA. Defendant also argues that Plaintiff fails to include facts sufficient to assert claims for failure to accommodate, retaliation, and hostile work environment under the ADA. Finally, Defendant argues that Plaintiff's claim under the FLSA must be dismissed because Plaintiff is an exempt employee. We will address each of Plaintiff's claims separately.

### A. Claims Under the ADA

#### 1. *Wrongful Discharge/Discrimination*

Plaintiff alleges that she was terminated because of her gastrointestinal issues and because those issues required her to take time off from work to recover from emergency surgery.

Title I of the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to [the] . . . discharge of employees . . . ." 42 U.S.C. § 12112. A "qualified individual with a disability" is a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To assert a prima facie case of discrimination, Plaintiff must show: (1) that she is disabled within the meaning of the ADA; (2) that she is otherwise qualified for the job, with or without reasonable accommodations; and (3) that she was subjected to an adverse employment decision as a result of discrimination. *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010). Defendant argues that Plaintiff has failed to allege the first element—that she is disabled under the ADA. An individual is considered disabled under the ADA if she has (1) "a physical or mental impairment that substantially limits one or more major life activities;" (2) "a record of such an impairment;" or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff pursues claims under all three definitions of disability.

(a) Actual Disability

Under the first definition, Plaintiff must allege facts showing that (1) she has a physical or mental impairment, and (2) that the impairment substantially limits one or more major life activities. An impairment is defined as "[a]ny physiological disorder or condition, . . . affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, *digestive*, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine . . . ." 29 C.F.R. § 1630.2(h) (emphasis added). In her Amended Complaint, Plaintiff states that she suffers from "health conditions related to her abdomen and stomach, including gastrointestinal issues." (Am. Compl.

8

¶ 20.) Plaintiff makes no mention of an official medical diagnosis, nor does she include any doctors notes as exhibits. However, Defendant does not dispute that Plaintiff suffers or suffered from an impairment requiring medical care. In addition, Plaintiff's gastrointestinal issues resulted in her requiring emergency surgery and time to recover. We are satisfied that Plaintiff suffers from a physical impairment under the ADA.

Next, we must consider whether Plaintiff alleges facts sufficient to show that her impairment substantially limits one or more major life activities. The ADA Regulations provide that "[a]n impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). "Substantially limits" should be construed broadly and should not demand extensive analysis. *Id.* § 1630.2(j)(1).

Plaintiff's Amended Complaint alleges that her abdominal issues, stomach issues, gastrointestinal issues, and gallbladder issues, have "**at times, limited her ability to perform some daily life activities**, including but not limited to working, sleeping, bending, walking, breathing, controlling bowel movements, and performing manual tasks (among other activities)." (Compl. ¶ 22 (emphasis added).) All of these activities constitute major life activities. *See* 29 C.F.R. § 1630.2(i)(1)(i) (noting that working, sleeping, bending, walking, breathing and performing manual tasks are major life activities); *see also id.* § 1630.2(i)(1)(ii) (noting that operation of a major bodily function, including the bowel, is a major life activity). However, Plaintiff does not include any facts explaining how these activities are limited, let alone, how they are *substantially limited*, which she is required to do. Plaintiff's conclusory statements,

9

without any factual support, are not sufficient. *Iqbal*, 556 U.S. at 678. Therefore, Plaintiff's claim that she suffered discrimination as a result of an actual disability must be dismissed.[1]

### (b) Record of Impairment

Plaintiff also alleges that she has a record of impairment. To state a claim based on this definition of disability, Plaintiff must allege facts showing that she "has a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, or was misclassified as having had such an impairment." 29 C.F.R. § 1630.2(k)(1). "Congress included 'record of' disability claims in the ADA to ensure that employees could not be subjected to discrimination because of a recorded history of disability." *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 436-37 (3d Cir. 2009).

Plaintiff has not alleged facts showing a documented history of a disability. She merely states that she suffered from gastrointestinal issues "several months" prior to her emergency gallbladder surgery, which occurred a little over a month before Plaintiff was terminated. The Third Circuit has held that "a relatively short-term absence from work, without any long-term impairment, is generally held to be insufficient to create a record of disability." *Id.* at 437; *see also Dawley v. Erie Indem. Co.*, 100 F. App'x 877, 883 (3d Cir. 2004) ("The fact that [the plaintiff] took a year leave from work to recover from his operation does not create a record of impairment."). Moreover, as explained above, Plaintiff has not alleged sufficient facts to show that her gastrointestinal issues substantially limited a major life activity. *See* 29 C.F.R.

---

[1] Defendant argues that the claim should be dismissed because Plaintiff's condition was temporary and therefore did not qualify as a disability under the ADA. However, following passage by Congress of the ADA Amendments Act in 2008, "[t]he effects of an impairment lasting or expected to last fewer than six months can be substantially limiting . . . ." 29 C.F.R. § 1630.2(j)(1)(ix). Plaintiff's condition, even if temporary, may qualify as a disability. *See, e.g., Wainberg v. Dietz & Watson, Inc.*, No. 17-2457, 2017 WL 5885840, at *2 (E.D. Pa. Nov. 28, 2017) (holding that hernia, despite it being a temporary condition, qualified as a disability under the ADA).

10

§ 1630.2(k); *see also Eshelman*, 554 F.3d at 437. These omissions from Plaintiff's Amended Complaint are fatal to her claim that she has a record of impairment.

          (c)      <u>Regarded as having an impairment</u>

Finally, Plaintiff alleges that she was regarded as disabled by Defendant. To be regarded as disabled under this section of the ADA, Plaintiff must show that:

> (1) she has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such impairment; (2) she has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) she has no such impairment but is treated by a covered entity as having a substantially limiting impairment.

*Ramage v. Rescot Sys. Grp., Inc.*, 834 F. Supp. 2d 309, 323 (E.D. Pa. 2011) (citing 29 C.F.R. § 1630.2(l)); *see also Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012).

The facts alleged do not support a claim under this definition of disability. Plaintiff does not allege that her employer treated her as having an impairment or that attitudes of individuals at NCS caused her impairment. In fact, she argues to the contrary—that Defendant did not consider her medical issues seriously enough or recognize that she needed time off from work to address these issues. The Amended Complaint is devoid of any facts that would support Plaintiff's claim. Plaintiff's discrimination claim based on the "regarded as" definition of disability will also be dismissed.

      **2.**    **Failure to Accommodate**

Plaintiff alleges that Defendant failed to provide reasonable accommodations for her disability. In particular, she states that she informed her supervisor, Cobbs-Fletcher, of her need to take time off of work following surgery to treat her conditions. She further states that her supervisor did not engage in the interactive process, but instead questioned her need to take time off of work, and disciplined her for absences related to her condition.

11

To state a claim for failure to accommodate under the ADA, Plaintiff must allege that: (1) she is disabled within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job; and (3) she has suffered an adverse employment decision as a result of discrimination. *Solomon v. School Dist. of Phila.*, 882 F. Supp. 2d 766, 776 (E.D. Pa. 2012). An employer's failure to provide a reasonable accommodation is considered an adverse employment action. *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004).

As we noted above, Plaintiff has failed to allege that she suffers from a disability under the ADA. Therefore, her claim for failure to accommodate also fails. We note that Plaintiff has also not alleged facts showing that she requested an accommodation that her employer did not provide. She requested time off to recover from the surgery and stated to Cobbs-Fletcher that she could work from home if she was able. Nowhere in the Amended Complaint is it alleged that Cobbs-Fletcher denied Plaintiff's request, or that Plaintiff was required to work from home as she recovered. In addition, Plaintiff does not allege how much time she requested off. She merely states that she returned to work on June 6, 2017, and provided a doctor's note stating she could return on that day. An indefinite or open-ended request for time off from work does not constitute a reasonable accommodation. *Fogleman v. Greater Hazleton Health All.*, 122 F. App'x 581, 586 (3d Cir. 2004); *see also Krensavage v. Bayer Corp.*, 314 F. App'x 421, 426 (3d Cir. 2008) ("[I]t has been recognized that an open-ended disability leave is not a reasonable accommodation under the ADA where, as here, the plaintiff does not present evidence of the expected duration of her impairment.").

Plaintiff also has not alleged sufficient facts to show that Defendant failed to engage in the interactive process. The ADA Regulations provide that "[t]o determine the appropriate

12

reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3). "[T]he purpose of the interactive process is to determine the appropriate accommodations: This process should identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 311 (3d Cir. 1999) (internal quotation marks omitted). Both the employee and the employer have a duty to assist in the search for the appropriate accommodation and to act in good faith. *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 330 (3d Cir. 2003). Plaintiff states only that she told her supervisor she needed time off to recover, and that she "would be willing to perform some work functions for Defendant from home, as able." (Am. Compl. ¶ 26.) Plaintiff alleges that Cobbs-Fletcher began to exhibit hostility towards Plaintiff after her surgery. However, there is no allegation that Cobbs-Fletcher denied Plaintiff her requests for time off. Plaintiff fails to state a claim for failure to provide a reasonable accommodation.

### 3. Retaliation

Plaintiff alleges that her termination, which occurred shortly after her complaints of discrimination, constitutes unlawful retaliation under the ADA. "Employers may not 'discriminate against any individual because such individual has opposed any act or practice made unlawful by the employment-discrimination statutes or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under the employment-discrimination statutes." *EEOC v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015) (quoting 42 U.S.C. § 12203(a)). Because the retaliation provision in the ADA applies to "any individual," Plaintiff need not show that she suffers from a disability.

*Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir. 1997) ("Unlike a plaintiff in an ADA *discrimination* case, a plaintiff in an ADA *retaliation* case need not establish that [s]he is a 'qualified individual with a disability.'") (italics in original).

To establish a prima facie case of retaliation under the ADA, Plaintiff must show: (1) that she engaged in a protected employee activity; (2) an adverse action by the employer either after or contemporaneous with her protected activity; and (3) a causal connection between her protected activity and the employer's adverse action. *Allstate*, 778 F.3d at 449; *Krouse*, 126 F.3d at 500. Defendant does not dispute that the first and second elements are met. Plaintiff engaged in protected activities when she (1) made a complaint on June 7, 2017, to Board Member Robert Smalls about alleged discriminatory harassment, and (2) made a formal complaint to the EEOC on June 22, 2017. She was terminated on June 23, 2017.

Defendant contends that Plaintiff has failed to allege the causation element of a retaliation claim. When determining causal connection, courts look at the temporal proximity between the protected activity and the adverse employment action. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007). If the temporal proximity is "unusually suggestive," this raises an inference of causation. *Id.* Courts may also look to "intervening antagonism or retaliatory animus" or "inconsistencies in the employer's articulated reasons for terminating the employee" when assessing if or whether causation is sufficiently alleged. *Id.*

Plaintiff's allegations support an inference of discrimination. Plaintiff was terminated only two weeks after her first complaint to the Board of Directors, and only one day after her formal complaint to the EEOC. These short time periods are unusually suggestive of discrimination. *See, e.g., Abdul-Latif v. Cty. of Lancaster*, 990 F. Supp. 2d 517, 530 (E.D. Pa. 2014) (holding that seven days is unusually suggestive and noting that "[o]rdinarily, a period of

14

less than one week is unusually suggestive"). In addition, Plaintiff has alleged facts showing that she experienced antagonism and retaliatory animus after her complaints. The day after she complained to the Board, she was issued a formal written discipline regarding call-in procedures while she was out on leave. Just two days after her complaint to the Board, she was suspended without pay pending the outcome of the investigation into her complaints. Board Member Smalls told Plaintiff that her complaints and assertion of legal rights "did not help her employment situation." Accordingly, Defendant's Motion to Dismiss Plaintiff's retaliation claim will be denied.

### 4. Hostile Work Environment

Plaintiff asserts a claim for hostile work environment under the ADA. To state a claim for hostile work environment under the ADA, Plaintiff must show that:

> (1) she is a qualified individual with a disability under the ADA; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) the employer knew or should have known of the harassment and failed to take prompt effective remedial action.

*Ballard-Carter v. Vanguard Grp.*, 703 F. App'x 149, 151-52 (3d Cir. 2017) (quoting *Walton v. Mental Health Ass'n*, 168 F.3d 661, 667 (3d Cir. 1999)).

Plaintiff contends that she was "belittled and ostracized" by Cobbs-Fletcher, who reprimanded her for her disability. (Pl.'s Resp. 22.) The facts alleged, at worst, describe hostility by a supervisor to an employee. The Amended Complaint is devoid of any facts supporting a finding that Plaintiff was subjected to severe and pervasive conduct or that she endured an abusive working environment. *See Ballard-Carter*, 703 F. App'x at 152 ("The ADA anti-discrimination mandate does not require a happy or even a civil workplace. Instead, it only prohibits harassment so severe or pervasive as 'to alter the conditions of the victim's

15

employment and create an abusive working environment.'" (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993))). Plaintiff's hostile work environment claim under the ADA will be dismissed.[2]

### B. Retaliation under FLSA

Finally, Plaintiff claims that she was retaliated against for asserting her rights under the FLSA. "The FLSA mandates that if an employee works more than forty hours per week, [s]he must be compensated for overtime hours at a rate at least one-and-one-half times the employee's regular rate." *Pignataro v. Port Auth. of New York & New Jersey*, 593 F.3d 265, 268 (3d Cir. 2010) (citing 29 U.S.C. § 207(a)(1)). Pursuant to 29 U.S.C. § 213(a)(1), employees "employed in a bona fide executive, administrative or professional capacity" are exempt from entitlement to overtime pay. Plaintiff asserts that she complained to the Board of Directors that Defendant's classification of her as an exempt employee under the FLSA precluded her from obtaining overtime pay, to which she believed she was entitled. She also complained to the Board that she was "not properly compensated (as a salaried employee) during her May of 2017 surgery recovery." (Am. Compl. ¶ 62.) She alleges that she "regularly worked in excess of forty hours a week" and was not paid overtime. (*Id.* ¶ 61.) "The FLSA is remedial and is construed broadly, but exemptions to it are construed narrowly i.e., against the employer." *Smith v. Johnson & Johnson*, 593 F.3d 280, 284 (3d Cir. 2010).

The FLSA contains an anti-retaliation provision that makes it unlawful for an employer to "discharge or in any other manner discriminate against an employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ." 29 U.S.C. § 215(a)(3). To state a claim for retaliatory discharge under the

---

[2] The claim also fails because Plaintiff has not sufficiently alleged a disability under the ADA.

16

FLSA, Plaintiff must plead: (1) that she engaged in protected activity; (2) that Defendant took an adverse employment action against her; and (3) there was a causal link between the Plaintiff's protected action and her employer's adverse action. *Preobrazhenskaya v. Mercy Hall Infirmary*, 71 F. App'x 936, 939 (3d Cir. 2003).

Plaintiff has alleged facts to support a plausible claim for retaliation under the FLSA. She engaged in a protected activity by complaining to the Board of Directors about their refusal to pay her overtime wages in light of her classification as exempt. An informal assertion of rights can constitute a "complaint" under the FLSA, so long as it is "sufficiently clear and detailed for a reasonable employer to understand it . . . as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011); *see also id.* (noting that the "standard can be met . . . by oral complaints, as well as written ones"); *Coyle v. Madden*, No. 03-4433, 2003 WL 22999222, at *1 (E.D. Pa. Dec. 17, 2003) ("[I]nformal complaints made to an employer trigger protection under this provision of FLSA."). The language of Section 215(a)(3) should be interpreted liberally. *Brock v. Richardson*, 812 F.2d 121, 123 (3d Cir. 1987). Plaintiff states that she complained to the Board that she (1) was improperly characterized as an exempt employee and therefore denied overtime compensation; and (2) was not paid her salary while she continued to work from home while on medical leave. The first complaint constitutes an informal assertion of rights under the FLSA. The second complaint does not, as it has no relationship to overtime pay or otherwise to FLSA protections. In addition, Plaintiff was terminated just two weeks after she made this complaint. The short time period between the adverse action and the protected activity plausibly suggests discriminatory intent on the part of Defendant.

17

Defendant argues that Plaintiff is an exempt employee and therefore she lacks standing to assert claims under the FLSA. Specifically, Defendant argues that the administrative exemption and the executive exemption apply to Plaintiff. "Under the administrative employee exemption, anyone employed in a bona fide administrative capacity is exempt from the FLSA's overtime requirements." *Smith v. Johnson & Johnson*, 593 F.3d 280, 284 (3d Cir. 2010) (citing 29 U.S.C. § 213(a)(1)). An administrative employee is defined in the Regulations as someone "whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" and "whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(2)-(3). The Regulations state that work in personnel management, human resources, employee benefits and labor relations all qualify as "work directly related to management or general business operations." 29 C.F.R. § 541.201.

Based on these regulations, Defendant contends that Plaintiff, who served as the Director of Human Resources, is an exempt employee under the administrative exemption to the FLSA. However, Plaintiff alleges in her Amended Complaint that, despite the title of her position, her duties included mostly non-exempt employee work. It is Defendant's burden to demonstrate that Plaintiff is an exempt employee. *Pignataro*, 593 F.3d at 268. At this early stage of the proceeding, when discovery has not yet been had and when "we view the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most favorable to . . . [P]laintiff," *see Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002), we are satisfied that Plaintiff has alleged a retaliation claim under the FLSA. After discovery, Defendant may again

raise the argument that Plaintiff is not entitled to FLSA protections because of her exempt status. Defendant's Motion to Dismiss the FLSA claim will be denied.[3]

## C. Punitive Damages

Defendant seeks dismissal of Plaintiff's claim of punitive damages. The parties do not dispute that punitive damages are not available for ADA retaliation claims. *Slayton v. Sneaker Villa, Inc.*, No. 15-0074, 2017 WL 1048360, at *14 (E.D. Pa. Mar. 20, 2017) (citing cases). However, punitive damages are available for discrimination claims asserted under the ADA, when "the complaining party demonstrates that the respondent engaged in a discriminatory practice . . . with malice or with reckless indifference." *Gagliardo v. Connaught Labs., Inc.*, 311 F.3d 565, 573 (3d Cir. 2002) (quoting 42 U.S.C. § 1981a(b)(1)). All of Plaintiff's discrimination claims under the ADA have been dismissed. Accordingly, her claim for punitive damages will also be dismissed.

## D. Request to Amend

Plaintiff requests that she be permitted to file an amended complaint in the event that any of her claims are dismissed. The Third Circuit has cautioned that curative amendments should be permitted unless an amendment would be futile or inequitable. *See Alston v. Parker*, 363 F.3d

---

[3] Defendant also argues that Plaintiff falls under the FLSA's executive exemption. Under the executive exemption, an exempt employee is one:

    (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
    (3) Who customarily and regularly directs the work of two or more other employees; and
    (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement or promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a). For the same reasons we noted with respect to the administrative exemption, it is premature at this stage to determine application of the executive exemption. Defendant may renew its argument as to application of this exemption after discovery.

19

229, 235 (3d Cir. 2004). We will permit Plaintiff an opportunity to cure the deficiencies that we have noted with respect to the claims that have been dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant Northern Children Service's Motion to Dismiss Plaintiff's Amended Complaint will be granted in part and denied in part.

An appropriate Order follows.

BY THE COURT:

R. BARCLAY SURRICK, J.